**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | | |
|---|---|---|---|
| JOYCELYNN BUSH *ex rel.* A.H., | : | | |
| a minor *et al.*, | : | | |
| | : | | |
| Plaintiffs, | : | Civil Action No.: | 07-1110 (RMU) |
| | : | | |
| v. | : | Document No.: | 16 |
| | : | | |
| DISTRICT OF COLUMBIA *et al.*, | : | | |
| | : | | |
| Defendants. | : | | |

**MEMORANDUM OPINION**

GRANTING IN PART AND DENYING IN PART THE PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT

**I. INTRODUCTION**

The plaintiffs, minor children bringing suit through their parents as next friends,[1] request

that the court determine whether they were prevailing parties at administrative due process

hearings held pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C.

§§ 1400 *et seq.* The defendant, the District of Columbia, through its silence concedes that 10 of

the 16[2] plaintiffs did prevail at the administrative level. As to the 6 remaining plaintiffs, the

court concludes that 4 were not prevailing parties. The reasons for these determinations are

unique to each plaintiff and the court discusses them in more detail below.

---

[1]     For simplicity, the court refers to individual plaintiffs by their parents' last name.

[2]     Two other plaintiffs filed a notice of voluntary dismissal on March 14, 2008. Praecipe (Mar. 14,
        2008).

## II.  FACTUAL & PROCEDURAL BACKGROUND

The "IDEA guarantees parents of disabled children an opportunity to participate in the identification, evaluation, or educational placement of children."  *Calloway v. District of Columbia*, 216 F.3d 1, 3 (D.C. Cir. 2000).  Parents who disagree with the identification, evaluation or educational placement of their children may request an administrative "impartial due process hearing" before a hearing officer.  20 U.S.C. § 1415(f).

The plaintiffs are 16 minor children and their parents; the children are students attending District of Columbia Public Schools ("DCPS") who received or are receiving special education services.  *See generally* Compl.  All the plaintiffs participated in administrative due process hearings to challenge actions taken by DCPS.  The plaintiffs allege that they were prevailing parties against DCPS at those hearings.  *Id.*  Accordingly, they filed a complaint on June 20, 2007, seeking $179,961.62 in attorneys' fees and costs under the IDEA.  *Id.* ¶ 37.  Several months later the plaintiffs filed a motion for summary judgment, requesting that the court determine whether they were prevailing parties at the due process hearings and, therefore, entitled to these fees.  *See generally* Pls.' Mot.  The parties have staked out their positions, and the court now turns to the plaintiffs' motion.

## III.  ANALYSIS

### A.  Legal Standard for Attorneys' Fees and Costs under IDEA

Federal Rule of Civil Procedure 54(d) requires a party seeking attorneys' fees and "related non-taxable expenses" to file a motion with the court.  FED. R. CIV. P. 54(d)(2)(A).  The motion "must specify the judgment and the statute, rule, or other grounds entitling the moving party to the award."  *Id.*  It must also state the amount or provide a fair amount of the award

sought.  *Id.*; *see also Herbin v. District of Columbia*, 2006 WL 890673, at *2 (D.D.C. Apr. 4, 2006).

The IDEA allows the parents of a disabled child to recover "reasonable attorneys' fees" so long as they are the "prevailing party."  20 U.S.C. § 1415(i)(3)(B).  A court's determination of the appropriate attorneys' fees, in other words, is based on a two-step inquiry.  First, the court must determine whether the party seeking attorneys' fees is the prevailing party.  *Id.*  A prevailing party "is one who has been awarded some relief by a court."  *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health and Human Res.*, 532 U.S. 598, 603 (2001); *Alegria v. District of Columbia*, 391 F.3d 262, 264-65 (D.C. Cir. 2004) (applying *Buckhannon* in the IDEA context).

Second, the court must determine whether the attorneys' fees sought are reasonable.  20 U.S.C. § 1415(i)(3)(B).  "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate."  *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *see also Blackman v. District of Columbia*, 397 F. Supp. 2d 12, 14 (D.D.C. 2005) (applying *Hensley* in the IDEA context).  The plaintiff bears the burden of demonstrating that the number of hours spent on a particular task is reasonable.  *Holbrook v. District of Columbia*, 305 F. Supp. 2d 41, 45 (D.D.C. 2004).  The plaintiff may satisfy this burden "by submitting an invoice that is sufficiently detailed to 'permit the District Court to make an independent determination whether or not the hours claimed are justified.'"  *Id.* (citing *Nat'l Ass'n of Concerned Veterans v. Sec'y of Def.*, 675 F.2d 1319, 1327 (D.C. Cir. 1982)).  "Once the plaintiff has provided such information, a presumption arises that the number of hours billed is reasonable and the burden shifts to the defendants to rebut the plaintiff's showing of reasonable hours."  *Herbin*, 2006 WL 890673, at

*5.  With respect to the reasonable hourly rate, attorneys' fees in IDEA actions in the District of Columbia are reasonable if they conform to the *Laffey* Matrix[3] created by the United States Attorney's Office.  *Lopez v. District of Columbia*, 383 F. Supp. 2d 18, 24 (D.D.C. 2005) (citing *Kaseman v. District of Columbia*, 329 F. Supp. 2d 20, 25 (D.D.C. 2004)); see also 20 U.S.C. § 1415(i)(3)(C) (stating that attorneys' fees awards "shall be based on rates prevailing in the community in which the action or proceeding arose for the kind and quality of services furnished").

### B.  The Court Grants in Part and Denies in Part the Plaintiffs' Motion for Summary Judgment

The plaintiffs focus their arguments on whether each individual plaintiff was a prevailing party at the due process hearing but stop short of taking the second step in this two-step process, *i.e.*, addressing whether the attorneys' fees sought are reasonable.[4]  For 10 of the 16 plaintiffs, the defendants do not oppose the plaintiffs' assertion that they were prevailing parties.  *See generally* Defs.' Opp'n.  Accordingly, the court addresses each of the remaining 6 plaintiffs in turn.

### 1.  Plaintiff Washington Was Not the Prevailing Party

During the 2006-07 school year, plaintiff Washington's son attended "a private full-time therapeutic residential special education program at North Spring Behavioral Healthcare in Leesburg, Virginia [] funded by DCPS."  Compl., Ex. E ("Wash. HOD") at 4.  Plaintiff Washington requested a meeting with DCPS to review her son's individualized education

---

[3]    The *Laffey* Matrix is "a schedule of charges based on years of experience."  *Herbin v. District of Columbia*, 2006 WL 890673, at *4 (D.D.C. Apr. 4, 2006).

[4]    Presumably then, once the court determines whether each of the plaintiffs was the prevailing party, the plaintiffs will submit a motion for attorneys' fees with the requisite invoices, calculations and briefing with supporting case law, pin cites and parentheticals, attesting to the reasonableness of the amounts sought.

program ("IEP") on February 2, 2007.  *Id.* at 3.  Three days later, before DCPS could respond,

she filed a due process complaint with the State Education Agency for the District of Columbia,

alleging that DCPS "failed to convene a meeting and identify a full time therapeutic day

program" (as opposed to the residential program in which the student was enrolled) and, thereby,

denied him a free appropriate public education ("FAPE").  Compl., Ex. E ("Wash. D.P. Compl.")

at 3.  In the due process complaint, plaintiff Washington requested, *inter alia*, that the hearing

officer determine that DCPS deprived her son of a FAPE, identify a full-time placement for him

and order DCPS to fund private placement, including transportation.  *Id.* at 4.  Before the due

process hearing, DCPS offered to convene a meeting within 20 school days of February 27, 2007

"and identify a full-time therapeutic program upon release from the residential treatment

placement."  Wash. HOD at 4.  Plaintiff Washington rejected this proposal.  *Id.*  In his decision

on April 13, 2007, the hearing officer recognized that the student was ready to be discharged

from the North Spring facility "as soon as an alternate full-time placement is identified," but that

DCPS had yet to conduct a meeting or identify a full-time placement.  *Id.* at 3-4.  Although the

hearing officer concluded that DCPS did not deny the student a FAPE, he identified High Road

Middle School of Washington for full-time placement and required DCPS to "place and fund"

the student at High Road, including transportation costs.  *Id.* at 4.

      The plaintiffs summarily conclude that the hearing officer's decision to place the student

at High Road and require DCPS to fund the placement renders plaintiff Washington a prevailing

party.  Pls.' Mot. at 4; Pls.' Reply at 4.  The defendants counter that because the hearing officer

decided that DCPS did not fail to provide a FAPE and ordered no more than what had been

offered by DCPS prior to the due process hearing, plaintiff Washington was not a prevailing

party.  Defs.' Opp'n at 4.  As an initial matter, the court notes that a hearing officer's

determination that DCPS did not deny a student a FAPE does not control the court's determination of prevailing party status. *T.S. ex rel. Skrine v. District of Columbia*, 2007 WL 915227, at *5 (D.D.C. Mar. 27, 2007) (reasoning that "[w]hile it is true that the hearing officer decided that there had been no denial of [the student's] entitlement to FAPE, that decision cannot constitute prevailing in these circumstances where the hearing officer ordered the plaintiff's requested relief").

Turning to the defendants' remaining objection, it is uncontested that DCPS voluntarily agreed to convene a meeting and "identify a full-time therapeutic program upon release from the residential treatment placement." Wash. HOD at 4. Although the plaintiffs do not respond to the defendants' argument that DCPS's pre-hearing proposal prevents plaintiff Washington from being a prevailing party, the court notes that whether the parties have agreed to the hearing officer's determination beforehand is inapposite. *See Buckhannon*, 532 U.S. at 604 (holding that "settlement agreements enforced through a consent decree may serve as the basis for an award of attorneys' fees . . . [because] it [] is a court-ordered 'chang[e] [in] the legal relationship between [the plaintiff] and the defendant'"); *Alegria v. District of Columbia*, 391 F.3d 262, 263 (D.C. Cir. 2004); *Abraham v. District of Columbia*, 338 F. Supp. 2d 113, 120 (D.D.C. 2004) (noting that "[t]he fact that the parties may have agreed to the [hearing officer's] terms is of no consequence"). The touchstone of the prevailing party inquiry is whether a judicial determination materially altered the legal relationship of the parties. *See Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 792-93 (1989). But even under this "generous formulation," a party has not prevailed if "the [] success on a legal claim can be characterized as purely technical or *de minimis* . . . ." *Id.* at 792.

Here, because DCPS was already obligated to provide an evaluation within 120 days of a referral and to place the student in "an appropriate special education school or program,"[5] the hearing officer's order requiring DCPS to place the student in a particular school[6] did not *materially* change the legal relationship between the parties.[7]   The court also questions plaintiff Washington's intent in filing a due process complaint a mere 3 days after formally requesting an IEP hearing for her son.  *Tex. State Teachers Ass'n*, 489 U.S. at 792 (concurring with the Tenth Circuit that nuisance settlements should not "give rise to a prevailing plaintiff" (quoting *Chicano Police Officer's Ass'n v. Stover*, 624 F.2d 127, 131 (10th Cir. 1980))).  Accordingly, plaintiff Washington did not prevail at the administrative level.  *See Alegria*, 391 F.3d at 265 (recognizing that "precedent 'counsel[s] against holding that the term prevailing party authorizes an award of attorney's fees *without* a corresponding alteration in the legal relationship of the parties'" (quoting *Buckhannon*, 532 U.S. at 605)).

## 2.  Plaintiff Gaskins Was Not the Prevailing Party

DCPS filed a due process complaint with the State Education Agency for the District of Columbia against plaintiff Gaskins and her son in February 2006.  Compl., Ex. G ("Gask. D.P. Compl.").  DCPS alleged that they were "unable to address the special education services required in [her son's] IEP . . . due to his truancy."  *Id.* at 3.  The parties reached a settlement agreement at a resolution session on March 2, 2006, stipulating that the student would receive

---

[5]     D.C. Code § 38-2561.02.

[6]     Wash. HOD at 4 (ordering DCPS to place and fund the student at High Road).

[7]     *See Rhodes v. Stewart*, 488 U.S. 1, 3-4 (1988) (explaining that "[a]t the end of the rainbow lies not a judgment, but some action (or cessation of action) by the defendant *that the judgment produces*") (emphasis added); *see also Robinson v. District of Columbia*, 2007 WL 2257326, at *5 (D.D.C. Aug. 2, 2007) (determining that the plaintiff was not a prevailing party because the most the hearing officer could do was order a deadline by which DCPS had to perform the evaluation).

"grief counseling, sanctions for educational neglect, and psychiatric services" and that he would report to school beginning March 6, 2006.  Compl., Ex. G ("Gask. HOD") at 3.  When the student did not return to school as agreed, DCPS brought a claim before the hearing officer on March 8, 2008, asserting that the settlement agreement was void.  *Id.* at 4.  The terms of the agreement, however, stated that it "may be voided by any party within 3 business days of the date the agreement is signed."  *Id.*  Because DCPS waited 4 business days before voiding the agreement and because it failed to notify plaintiff Gaskins of its intention to void the agreement, the hearing officer deemed the agreement enforceable and dismissed the action.  *Id.*

The defendants contend that plaintiff Gaskins was not a prevailing party at the administrative level because enforcing the settlement agreement did not alter the parties' legal relationship in a real and substantial manner.  Defs.' Opp'n at 4.  The plaintiffs respond that successfully defending the claim brought against plaintiff Gaskins qualifies her as a prevailing party.  Pls.' Reply at 5-6.  Although a settlement, by itself, cannot convey prevailing party status, *Alegria*, 391 F.3d at 263, if the settlement receives "some official judicial approval . . . and some level of continuing judicial oversight" it may give rise to a prevailing plaintiff, *T.D. v. LaGrange Sch. Dist. No. 102*, 349 F.3d 469, 479 (7th Cir. 2003) (citing *Buckhannon*, 532 U.S. at 604 n.7).  Continuing judicial oversight, however, "will often be lacking unless the terms of the agreement are incorporated into the order of dismissal."  *Buckhannon*, 532 U.S. at 604 n.7.

In this case, the parties offer no arguments on the issue, but the record reflects that the hearing officer did no more than dismiss the complaint without prejudice.  Gask. HOD at 4 (ordering that "the *Complaint* is **DISMISSED WITHOUT PREJUDICE** . . . [and] that this Order is effective immediately").  Clearly, the hearing officer did not incorporate any of the terms from the parties' agreements at the resolution session into this order.  *Id.*  Because the

hearing officer's decision requires no further oversight, the court concludes that plaintiff Gaskins

was not the prevailing party.  *See Abraham*, 338 F. Supp. 2d at 120 n.8 (noting that "[i]t would

be insufficient for an HOD to merely mention the existence of a settlement agreement or to

dismiss the claim as moot due to settlement").

### 3.  Plaintiff Benbow Was the Prevailing Party

At the time of the due process hearing on March 31, 2006, plaintiff Benbow's son

attended Turner Elementary School.  Compl., Ex. O ("Benbow HOD") at 1-2.  Over a year

earlier, on February 16, 2005, DCPS determined that the student had a learning disability,

requiring "20 hours of specialized instruction and 30 minutes of psychological counseling" per

week.  *Id.* at 2.  On December 20, 2005, plaintiff Benbow requested that DCPS re-evaluate her

son;[8] she then filed a due process complaint on January 11, 2006, requesting, *inter alia*, that the

hearing officer determine that DCPS failed to comply with the IDEA, order DCPS to re-evaluate

her son and convene a meeting to review the new assessments in fashioning a new IEP.  Resp. to

Ct. Order (May 1, 2008) ("Benbow D.P. Compl.") at 3.  At a resolution meeting on January 24,

2006, DCPS agreed to conduct re-evaluations and to convene an IEP meeting on February 24,

2006.[9]  Benbow HOD at 2.  This meeting did not occur, however, because the re-evaluations had

not yet been completed.  *Id.*  And as of March 31, 2006, the date of the due process hearing, no

new date had been scheduled for the IEP meeting.  *Id.*  Because the time between plaintiff

Benbow's request for re-evaluations and the filing of the due process complaint was too short,

the hearing officer concluded that DCPS had not denied plaintiff Benbow's son a FAPE and that

---

[8]    Plaintiff Benbow requested "initial evaluations" on September 19, 2005, but this request was
      ambiguous because an initial evaluation had already been completed in February of that year.
      Benbow HOD at 2.

[9]    The record also indicates that the IEP meeting was to take place on February 16, 2006.  Benbow
      HOD at 2.

DCPS was the "prevailing party in this matter." *Id.* at 4.  The hearing officer, nevertheless, ordered that DCPS convene an IEP meeting before April 25, 2006 to review the evaluations and revise the student's IEP.  *Id.*

The plaintiffs assert that the hearing officer's determination that DCPS was the prevailing party is not controlling in this case.  Pl.'s Mot. at 12-13.  What is essential, they allege, is success on the merits.  *Id.* at 13.  The defendants respond that the merits swing in their favor because the hearing officer determined that DCPS was the prevailing party, concluded that there was no violation of a FAPE and ordered DCPS to do nothing more than comply with the IDEA.  Defs.' Opp'n at 6.  As an initial matter, neither a hearing officer's conclusion that DCPS was a prevailing party, *Medford v. District of Columbia*, 691 F. Supp. 1473 (D.D.C. 1988), nor his determination that DCPS did not deny the student a FAPE, *Skrine*, 2007 WL 915227, at *2, requires this court to consider DCPS the prevailing party.  And a closer inspection of the record reveals that plaintiff Benbow achieved several of her goals in filing the due process complaint, including an order requiring DCPS to convene an IEP meeting to review and revise the student's IEP.  Benbow HOD at 4.  Because plaintiff Benbow achieved her primary objective through "judicial [or agency] approval and oversight," *Buckhannon*, 532 U.S. at 604 n.7, and because DCPS failed to update the student's IEP within a year as required by the IDEA, *see* 20 U.S.C. § 1414(d)(4)(A)(i), the hearing officer's order requiring DCPS to take action to conform with the IDEA altered the parties' legal relationship, *Abraham*, 338 F. Supp. 2d at 120 n.19 (opining that for an IDEA claimant to be a prevailing party, the hearing officer "must order DCPS to undertake or refrain from some conduct consistent with that statute").  Thus, plaintiff Benbow was the prevailing party at the administrative level.  *Skrine*, 2007 WL 915227, at *4 (concluding

that a "plaintiff [who] sought and received an order for an independent evaluation at public expense [] constitutes 'prevailing' under the IDEA").

### 4. Plaintiff Taylor Was the Prevailing Party

While a student at Gibbs Elementary School in October 2005, plaintiff Taylor's daughter was diagnosed with Oppositional Defiance Disorder and recommended for special services. Compl., Ex. P ("Taylor HOD") at 2. In January 2006, DCPS conducted a psycho-educational evaluation and the following month completed a social work evaluation. *Id.* In February of that year, Plaintiff Taylor requested that DCPS conduct a speech/language evaluation and convene an IEP meeting on or before March 30, 2006. *Id.* Shortly before this deadline, on March 29, 2006, plaintiff Taylor filed a due process complaint with the State Education Agency for the District of Columbia. Resp. to Ct. Order (May 1, 2008), Ex. 1 ("Taylor D.P. Compl.") at 1. The next day, although DCPS was prepared to convene the IEP meeting, plaintiff Taylor and her advocate were not available. Taylor HOD at 3. At the resolution/IEP hearing on May 25, 2006, held days before the due process hearing, DCPS developed a partial IEP, concluding that the student was eligible for special education services and determining that the general education setting was not appropriate for her. *Id.* DCPS did not, however, identify a specific placement location. *Id.* In her due process complaint, plaintiff Taylor requested that the hearing officer conclude that DCPS denied her child a FAPE and order DCPS to convene an IEP hearing to discuss compensatory education and to determine interim placement. Taylor D.P. Compl. at 4. The hearing officer concluded that DCPS had not denied the student a FAPE but did order DCPS to convene an IEP meeting to complete the IEP; discuss and determine placement; and determine if additional evaluations would be necessary. *Id.* at 5.

The plaintiffs aver that plaintiff Taylor was a prevailing party because she received the relief she sought at the due process hearing.  Pls.' Reply at 5.  The defendants counter by substantially quoting the hearing officer's decision, highlighting the hearing officer's conclusions that DCPS was the prevailing party; that DCPS did not deny the student a FAPE; and that plaintiff Taylor was responsible for delaying the IEP meeting.  Defs.' Opp'n at 7.  As discussed *supra*, the fact that the hearing officer concluded that DCPS was a prevailing party and that DCPS did deny the student a FAPE does not control this court's determination of whether a plaintiff was the prevailing party at the due process hearing.  And although the court agrees with the defendants' final point that plaintiff Taylor should not be rewarded for causing the initial delay in convening an IEP meeting, Taylor HOD at 3, DCPS had a subsequent opportunity to complete the student's IEP on May 25, 2006, before the due process hearing, *id.* at 4 (observing that "the evaluation and eligibility determination should have been completed by March 14, 2006").  At that meeting, "the social/emotional goals and the academic reading and writing goals were not completed . . . and no specific location for the placement was determined."  *Id.* at 3.  Accordingly, the hearing officer granted the substance of plaintiff Taylor's request by ordering DCPS to complete the IEP and place the student in accordance with the IDEA.  *Id.* at 5.  Because plaintiff Taylor succeeded on the merits of her claims, she was the prevailing party at the due process hearing.  *See Abraham*, 338 F. Supp. 2d at 120 n.8 (noting that "[f]or an IDEA claimant to be a 'prevailing party,' the [hearing officer] must order DCPS to undertake or refrain from some conduct consistent with that statute").

### 5.  Plaintiff Warr Was Not the Prevailing Party

On February 1, 2006, plaintiff Warr requested that DCPS evaluate her daughter's eligibility for special education services.  Compl., Ex. Q ("Warr HOD") at 3.  Six days later,

plaintiff Warr filed a due process complaint requesting, *inter alia*, that a hearing officer

determine that DCPS failed to provide her daughter a FAPE, complete all necessary evaluations,

convene an IEP meeting and draft an appropriate IEP.  Resp. to Ct. Order (May 1, 2008), Ex. 2

("Warr D.P. Compl.") at 3.  The hearing officer rejected plaintiff Warr's argument that DCPS

had denied the student a FAPE, but ordered DCPS to complete the evaluations and convene an

IEP meeting before April 29, 2006 and discuss and determine placement, if eligible.  Warr HOD

at 4.

      The parties' familiar hollow arguments do not lend the court support in determining

whether the hearing officer's decision altered the parties' legal relationship.  Pls.' Mot. at 13-14;

Defs.' Opp'n at 7-8.  But as plaintiff Warr's circumstances closely track the facts analyzed with

respect to plaintiff Washington, the court arrives at the same destination.  *See supra* Part III.B.1.

To wit, even without the hearing officer's order, DCPS was within the 120-day window provided

by statute to perform the evaluations, develop an IEP and place the student should she be deemed

eligible.  D.C. Code § 38-2561.02.  Because DCPS was still within the compliance window

provided by statute, the hearing officer's order, requiring DCPS to complete evaluations and

convene a hearing approximately 30 days earlier than the statutory deadline, did not materially

alter the parties' legal relationship.  *See Rhodes v. Stewart*, 488 U.S. 1, 3-4 (1988).  The court

further recognizes that considering plaintiffs to be prevailing parties in these circumstances

would encourage premature due process complaints, yielding determinations before DCPS has

had the opportunity to comply with its statutory obligations.  Accordingly, plaintiff Warr was not

the prevailing party.  *See Tex. State Teachers Ass'*, 489 U.S. at 792 (noting that a party has not

prevailed "[w]here the [] success on a legal claim can be characterized as purely technical or *de

minimis*"); *see also Robinson v. District of Columbia*, 2007 WL 2257326, at *5 (D.D.C. Aug. 2,

2007) (determining that the plaintiff was not a prevailing party because the most the hearing

officer could do was order a deadline by which DCPS had to perform the evaluation).

### 6.  Plaintiff Johnson Was Not the Prevailing Party

By the beginning of February 2006, plaintiff Johnson's daughter had been suspended

from Shaw Junior High School for more than 10 days.  Compl., Ex. R ("Johnson HOD") at 2.

On January 31, 2006, before the student could serve her suspension, she was incarcerated, where

she remained until March of that year.  *Id.*  DCPS convened an IEP meeting on April 6, 2006 and

determined that the student was eligible for special education services.  *Id.* at 3.  DCPS also

developed an IEP and issued a notice of placement for "a combination setting at Shaw."  *Id.*  In

addition, DCPS resolved to conduct a functional behavior assessment and develop a behavior

intervention plan after the student returned from suspension and attended school for 30 days.  *Id.*

Finally, it proposed a compensatory education plan for behaviors, possibly caused by her

disability, for which she had been suspended over the previous academic year.  *Id.*

DCPS reconvened an IEP meeting on April 28, 2006, shortly after the student had been

suspended for 3 days.  *Id.* at 4.  At the meeting, DCPS rescinded all of the student's suspensions

as "manifestation[s] of her disability" and agreed to provide 52 hours of compensatory education

that summer.  *Id.*  After the student was suspended again from April 27 to May 4, 2006, DCPS

held a meeting on May 10, 2006 and determined that the infraction resulting in this suspension

was also a "manifestation of the student's disability."  *Id.*

On May 18, 2006, plaintiff Johnson filed a due process complaint, contending that DCPS

denied her daughter a FAPE by improperly suspending her for more than 10 days and failing to

convene an IEP meeting, develop an IEP, conduct a functional behavioral assessment, develop a

behavior plan and provide appropriate placement.  Compl., Ex. R ("Johnson D.P. Compl.") at 3.

The due process complaint requested 19 forms of relief, including a request that "[a]ll meetings shall be scheduled through counsel for the parent." *Id.* at 6. Notable for reasons discussed below, the plaintiff does not request that DCPS convene an IEP meeting. *See generally id.*

The hearing officer rejected all of plaintiff Johnson's arguments. First, the hearing officer determined that although an IEP meeting must ordinarily be convened within 10 days of a student being suspended for 10 or more days, here DCPS was justified in delaying the hearing because the student was incarcerated. Johnson HOD at 6. Second, plaintiff Johnson's arguments that DCPS denied her daughter a FAPE by failing to conduct a functional behavioral assessment and develop a behavioral plan were unavailing. *Id.* The hearing officer explained that DCPS's decision to delay the assessments until the student completed 30 days of school was reasonable because the student was returning from incarceration. *Id.* Finally, the hearing officer concluded that DCPS's decision not to move the student to a residential facility was in accord with the recommendations provided in the evaluations of the student. *Id.* at 7. For these reasons, on August 31, 2006, the hearing officer determined that DCPS had not denied the student a FAPE and ordered that it conduct another IEP hearing "if it has not already done so" to review new evaluations, further develop the student's IEP and arrange appropriate placement. *Id.*

Attorneys' fees should be awarded only when a party "has prevailed on the merits of at least some of his claims." *Buckhannon*, 532 U.S. at 603. Of plaintiff Johnson's 19 requests for relief, Johnson D.P. Compl. at 6-7, the hearing officer partially granted one: "Scheduling of the MDT/IEP meeting is to be arranged through parent's counsel," Johnson HOD at 8. Because partially granting 1 of plaintiff Johnson's 19 requests constitutes *de minimis* relief in this case, she was not a prevailing party. *See Tex. State Teachers Ass'n*, 489 U.S. at 792.

## IV.  CONCLUSION

For the foregoing reasons, the court grants in part and denies in part the plaintiffs' motion for summary judgment.  An order consistent with this Memorandum Opinion is separately and contemporaneously issued this 29th day of September 2008.


RICARDO M. URBINA
United States District Judge